## SHEPARD,
### *Respondent,*

*v.*

## SISTERS OF PROVIDENCE IN OREGON,
dba St. Vincent Hospital and Medical Center,
*Appellant.*

### (A8401-00175; CA A42247)

750 P2d 500

Larry A. Brisbee, Hillsboro, argued the cause and filed the briefs for appellant.

Nelson L. Walker, Oregon City, argued the cause for respondent. With him on the brief were Curt B. Anderson and Hibbard, Caldwell, Bowerman & Schultz, Oregon City.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant St. Vincent Hospital and Medical Center (hospital) appeals from the trial court's order, entered on its own motion, granting plaintiff a new trial after the jury had found for hospital in this medical malpractice action. Plaintiff was injured by the alleged negligence of Dr. Teply, a surgical resident, while he was assisting the primary surgeon, Dr. Wilson,[1] in performing an operation on plaintiff at hospital. Teply's services at hospital were provided as part of an "integrated program," under an agreement between hospital and the University of Oregon Health Sciences Center (university). The trial court segregated for trial the issue of whether hospital was vicariously liable for Teply's negligence. ORCP 53B. The dispositive question was whether Teply was hospital's employe or agent, or was solely university's (or Wilson's), in connection with plaintiff's injury. The court rejected plaintiff's requested instructions on "ostensible agency" and dual agency and instructed the jury only on an actual agency theory. After the jury returned its verdict and judgment was entered for hospital, the court concluded that its failure to give the two requested instructions was a material error of law which substantially prejudiced plaintiff's rights and which required a new trial. ORCP 64B(6). Hospital appeals and assigns error to the order granting the new trial.[2]

Hospital argues, in effect, that neither it nor its employes had any right of control over Teply and the other residents in the program and that Teply and the residents were subject to the exclusive control and supervision of university and of the surgeons whom they assisted. Consequently, hospital maintains that there was no agency relationship—actual, dual or ostensible—between it and Teply. That argument requires a detailed examination of the structure of the integrated program.

The participating residents are employed by university which assigns them, on a rotating basis, to hospitals with

---

[1] Wilson and plaintiff's treating physician, Condon, were named defendants along with hospital, but the action has been dismissed as to both of them and as to their respective professional corporations.

[2] Hospital also assigns error to the denial of its motion for a directed verdict. Insofar as that assignment raises issues which hospital does not raise through its other assignment, it warrants no discussion, and we reject it.

which it has affiliation agreements. Each participating hospital must designate a head of the integrated program. That role at defendant hospital is performed by the director of hospital's department of surgery, who is a salaried hospital employe. Hospital's associate administrator testified that, notwithstanding university's primary responsibility for the supervision and professional development of residents in the program, hospital's director of surgery supervises the residents, reviews their work and criticizes their work "if that's necessary." For purposes of the program, hospital's director of surgery is a member of university's surgery faculty.

Residents perform their services under the immediate supervision and direction of individual physicians, usually private practitioners, who have surgical privileges at and are members of the medical staffs of participating hospitals. Those physicians are denominated "preceptors," and they must either be university faculty members or be approved as preceptors by the chairman of university's department of surgery. Wilson was acting as Teply's preceptor in connection with plaintiff's operation. Teply was the chief surgical resident at hospital. It was his responsibility to assign residents to preceptors for particular procedures. He assigned himself to assist Wilson in the surgery on plaintiff.

Plaintiff signed a form when she was admitted to hospital in which she consented to surgery by her "physician, and associates and assistants chosen by [him]." She testified, however, that she was unaware that a resident who was not a hospital employe would assist in that surgery and that she would not have consented to the participation of such a resident had she known that it was contemplated. Plaintiff did not meet Teply before the operation nor, apparently, did she even know that he existed.

The agreement between university and hospital contains these provisions:

"Nothing contained in this agreement shall be construed to limit in any way the responsibility of the Hospital for the establishment of its own policies and for the operation of the Hospital in a manner consistent with its objectives and the rendition of quality health care at a reasonable cost.

"\* \* \* \* \*

"The clinical experience of such clinical education programs

will be subject to the joint approval of Hospital and University. It is understood that, in the interest of high quality patient care, Hospital reserves the right under any clinical affiliation program to control the amount and type of direct services to patients provided by students in this program."

Although hospital makes specific arguments concerning the dual and ostensible agency instructions, which we will address, its overriding argument appears to be that, under the evidence or as a matter of law, it had no right of control over Teply. There are three facets to that argument. Hospital contends, first, that university and persons acting as its agents had exclusive general responsibility for the residents' professional work. Second, it argues that, with respect to particular procedures, the residents were under the exclusive direction of the preceptors whom they assisted and over whose professional services hospital had no control. *See Holland v. Eugene Hospital et al.,* 127 Or 256, 270 P 784 (1928). Hospital's third point, derived from the first two, is that it was essentially a cipher in the arrangement and simply provided facilities and the mechanics by which residents for whom university was generally responsible could be brought together with the private physicians who would assume responsibility over them for specific professional activities. The jury could have and, apparently, did find facts in accordance with that argument.

However, that finding was not compelled as a matter of law, and there was ample evidence from which the jury could have made the opposite finding. The arrangement between university and hospital assumed a complicated form. For purposes of the program, hospital's chief surgical employe became at least a nominal university faculty member, and the preceptors from hospital's medical staff with whom the residents worked directly had to be affiliated with or approved by university. The fact finder was not obliged to agree with hospital that its director of surgery was acting solely as a university faculty member, rather than as its employe, in the supervision of the residents which there was evidence to show he exercised. The jury was also not required to believe that the reservation of hospital's right of control in the contract did not mean what it said.

*Themins v. Emanuel Lutheran,* 54 Or App 901, 637 P2d 155 (1981), *rev den* 292 Or 568 (1982), is analogous. The

injuries there were allegedly caused by the negligence of an orthopedic resident who was on rotation from the university and who treated the plaintiff at the defendant hospital's emergency facility. We reversed the trial court's summary judgment for the hospital and explained:

> "In offering emergency room services, a hospital is offering more than a place. When an injured person seeks such services, we can see no principled reason for allowing the patient to sue the hospital when the doctor is salaried by the hospital, but prohibiting such a suit when the doctor is not salaried.[8] *See Schagrin v. Wilmington Medical Center,* 304 A2d 61 (Del Super Ct 1973).
>
> "Thus, although the fact that [the resident] was salaried by the medical school and not by Emanuel is perhaps some evidence that he was not the agent of the hospital, it does not *as a matter of law* determine that he was not. As the orthopedic resident available for emergency room services, he was arguably acting as an agent in performing 'an inherent function of the hospital, a function without which the hospital could not properly achieve its purpose.' *Beeck v. Tucson General Hospital,* 18 Ariz App 165, 500 P2d 1153 (1972).

------

"[8] Our view does not conflict with the result reached in *Holland v. Eugene Hospital et al,* 127 Or 256, 270 P 784 (1928). There, the hospital's motion for nonsuit was granted because plaintiff *contracted directly* for the services of the *physician,* and there was no evidence of any contractual relationship between the hospital and the physician." 54 Or App at 907-08. (Emphasis in original.)

Hospital appears to consider this case as more analogous to *Holland v. Eugene Hospital et al., supra,* than to *Themins,* because, it argues, plaintiff contracted directly with Wilson for the surgery and he in turn had exclusive control over Teply's conduct in the operating room. That argument misses the point. It *may* be correct that Wilson had sole control over Teply's performance of the procedure on plaintiff. *See May v. Broun,* 261 Or 28, 37-38, 492 P2d 776 (1972), and authorities there cited. However, it is not correct that any agency relationship which may have existed between Teply and hospital ended at the operating room door. The law is contrary to hospital's understanding that it ceases to be vicariously liable for its servants' negligence, or that they become loaned servants, while they are performing surgical

services on hospital facilities under the immediate direction of a private physician. *See Piehl v. The Dalles General Hospital,* 280 Or 613, 619-20, 571 P2d 149 (1977).

It follows from our conclusion that the jury could have found that Teply was hospital's actual agent, as well as university's, that it also could have found that he was simultaneously the agent of both. Hospital argues that giving a dual agency instruction, informing the jury that it could find that Teply was hospital's agent, even if he was also university's, would have been superfluous. According to hospital, the jury was properly instructed on the issue of actual agency, and

> "the jury, being obligated to follow the court's instructions, must focus on the relationship between [hospital and Teply] at the time of the conduct in question. The relationship of that servant to other masters is simply not a part of that focus. Either that master had the right to exercise control or he did not."

Plaintiff answers that there is an "intuitive presumption" that a person can serve only one master, and

> "[i]n his opening statements to the jury, Judge Roth reinforced this presumption by stating:
>
>> " 'The issue here is whether Dr. Teply, who is a resident of this St. Vincent Hospital, is a surgery resident—whether he is an agent of the hospital *or* whether he was an agent operating under the Oregon Science Institute up on the hill as a resident.' [Emphasis added.]
>
> "Thus, the initial impression the jurors received was that they were to choose which of the two institutions actually employed Teply. To dispel this natural 'either/or' presumption, plaintiff requested the [dual agency] instruction."

There was evidence to support the giving of the requested instruction on dual agency. Insofar as the point of hospital's argument is that that instruction would have been redundant or superfluous in the light of other instructions which were given, we disagree. It is a reasonable assumption, as plaintiff suggests, that the jury could have understood that whether Teply was university's or hospital's agent was an "either/or" question. The trial court correctly concluded that it should have given the dual agency instruction.

Whether it was also correct in concluding that it should have instructed the jury on ostensible—or apparent

—agency is a closer question. We said in *Themins v. Emanuel Lutheran, supra:*

> "Moreover, a jury could have found [the resident] an 'ostensible,' if not actual, agent of Emanuel. The rule of apparent agency is set forth in Restatement (Second) Agency [§ 267] (1958):
>
>> " 'One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liablity to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.'
>
> "Comment [a] to that section says that, while
>
>> " '[t]he mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable[,] * * * [t]he rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant.'
>
> "Although it cannot reasonably be said that Emanuel literally *invited* plaintiff to utilize the services of the house officers for which it had contracted, it had nevertheless undertaken to provide emergency treatment to the community. An express invitation was not required.
>
> "There is nothing in the record to show that plaintiff should have been on notice that Dr. Hoppert was *not* an employee of Emanuel. Certainly, it would be unreasonable to require that an emergency room patient ask whether the doctors attending him in the emergency room are employees of the hospital. *See Seneris v. Haas,* 45 Cal 2d 811, 291 P2d 915 (1955). It would be even more unreasonable to require that he determine whether they are employees of the hospital or of the state." 54 Or App at 908-09. (Emphasis in original; some brackets supplied.)

Hospital makes two arguments for distinguishing the ostensible agency issue in this case from the issue in *Themins.* It maintains, first, that *Themins* is one of a line of cases from various jurisdictions which hold that practitioners performing functions for which hospitals themselves are responsible, or "hold themselves out" to be, *e.g.,* emergency, radiology and pathology services, are the hospitals' ostensible, if not their actual, agents. According to hospital, however, those cases do

not extend to situations such as this where the patient contracts with a private physician for care to be provided by him on hospital facilities. Hospital's second argument is that, unlike in *Themins,* where the patient saw and dealt with the resident directly as a consequence of coming to the hospital for emergency care, plaintiff here had *never* knowingly come into contact with Teply before her surgery. Therefore, hospital contends that she

> "had no reason to believe that he would be involved in any manner in her surgery. She did not become aware that he was involved until much later. The record is devoid of any representation by the hospital that Dr. Teply was its agent under these circumstances. There being no representation, it can hardly be said that she justifiably relied on anything done by the hospital in allowing Dr. Teply to participate in her surgery."

The cases which hospital seeks to distinguish in its first argument stand for the proposition that physicians who are nominally "independent contractors" may be treated as actual or ostensible hospital agents, for purposes of vicarious liability, when they perform professional services which are integral to hospital operations and which hospitals hold themselves out to the public to provide. *See, e.g., Beeck v. Tucson General Hospital,* 18 Ariz App 165, 500 P2d 1153 (1972) (radiologist); *Adamski v. Tacoma General Hospital,* 20 Wash App 98, 579 P2d 970 (1978) (emergency physician). Hospital accountability for the torts of such physicians has generally been treated as an exception to the once widely followed rule that the torts of "skilled professionals" and of private physicians are not imputable to hospitals, although committed on hospital facilities. *See Holland v. Eugene Hospital et al., supra; Schloendorff v. New York Hospital,* 211 NY 125, 105 NE 92 (1914).[3]

Hospital apparently reads *Themins* and similar cases from other jurisdictions to mean that a hospital cannot be

---

[3] The rule has been strongly criticized in cases such as *Themins, Beeck* and *Adamski. See also May v. Broun, supra; Bing v. Thunig,* 2 NY2d 656, 163 NYS 2d 3, 143 NE2d 3 (1957). The aspect of the rule which pertains to professionals who are hospital employes is not the current law in Oregon. *See, e.g., Piehl v. The Dalles General Hospital, supra; May v. Broun, supra.* The continuing vitality of the rule as it pertains to private physicians need not be addressed in this case. *See Barrett v. Emanuel Hospital,* 64 Or App 635, 669 P2d 835, *rev den* 296 Or 237 (1983).

charged with *respondeat superior* liability on the basis of ostensible agency when the injured patient has contracted with a private physician, who is in charge of the patient's care at hospital and whose own negligence cannot be imputed to it. Hospital's understanding is incorrect, for essentially the same reasons which we stated in our discussion of the right of control issue. The relevant relationship in this case is between hospital and Teply, not between it and any private physician with whom plaintiff contracted. The fact that plaintiff contracted with a private physician as her primary surgeon is not, as a matter of law, inconsistent with hospital's having clothed Teply with ostensible authority to act as its agent in assisting the private doctor and in rendering professional care to plaintiff.[4]

Hospital's second argument is somewhat more colorable but also unconvincing. The emergency physicians in *Themins v. Emanuel Lutheran, supra,* and *Adamski v. Tacoma General Hospital, supra,* were "held out" as hospital employes in a very literal sense: not only did the patients have actual contact with them, but the patients presumably—at least from their standpoint—could not have obtained emergency services except through the physicians who were on duty at the hospitals' facilities. Here, conversely, plaintiff had no presurgical contact with Teply, and hospital provided her with no knowledge about him or the role that he might play in the surgery. However, hospital did have interns or residents on duty, and plaintiff was examined by two interns after her admission to hospital. She was aware generally of the existence and functions of interns and residents, and she thought that they worked for hospital.

The thrust of hospital's argument is that a hospital cannot be found to have made a representation of ostensible authority, and a patient cannot be found to have relied on such a representation, unless the putative ostensible agent has

---

[4] For the same reason, hospital is not aided by its point that, if Wilson had selected another private physician instead of a resident to assist him, no vicarious liability could befall hospital by virtue of the assistant's negligence. Teply *was* an employe, and his employer or employers can be vicariously liable for his negligence, although they might not be subject to liability for similar negligence by a physician whom they did not employ.

University's potential liability is further defined in ORS 30.268, but that is not an issue in this case.

pre-therapeutic contact with or is made known to the patient before the treatment. We do not agree that the ostensible agency doctrine is that narrow. Indeed, reading it that narrowly would undermine its purpose. The root of the doctrine is that the principal has the knowledge of the apparent agent's true status which makes it possible for the principal, by inadvertance or design, to create or prevent a third party's reasonable misimpression that the agent has authority to act for the principal. *See Wiggins v. Barrett & Associates, Inc.,* 295 Or 679, 687-88, 669 P2d 1132 (1983).

It would be anomalous to conclude that apparent authority can be found only when the third party knows about or has dealt with a particular apparent agent but that the principal cannot be liable for the act of one of a group of persons whom it has clothed with apparent authority if it is impossible for third parties to know which of the group they will deal or have dealt with. Stated otherwise, the objectives of the apparent authority doctrine would not be promoted by the availability of a "safety in numbers" defense. Similarly, there is no merit to hospital's thesis that ostensible agency cannot be found if the person injured by the agent did not consent to or learn about the agent's involvement until after the injury. If the holding out occurred before the injurious event and if the third party's reliance on the representation pertained to the prospective event, the doctrine is applicable.

Applying what we have said to this case, there was evidence from which the jury could find that Teply was hospital's ostensible agent. Although a private physician was in charge of the surgery, it could be found that hospital represented that the support personnel assisting the surgeon in its operating room would be hospital employes; and although plaintiff did not know about Teply himself, it could be found that hospital represented, and she justifiably believed, that *any employe* who performed the services that Teply did on hospital facilities would be hospital's employe rather than a different unknown third party's. The trial court was correct in concluding that it should have given the requested instruction on ostensible agency.

The parties dispute whether the court's failure to give the two instructions warrants a new trial. They also disagree about the extent to which we should defer to the trial court's

discretion in ordering the new trial, in the event that we disagree with its view that the errors were prejudicial to plaintiff. Recent appellate opinions leave the answer to the latter question less than clear. *Compare Beglau v. Albertus,* 272 Or 170, 536 P2d 1251 (1975), *with Wegener v. Walter Kidde & Co.,* 73 Or App 22, 697 P2d 981, *rev den* 300 Or 333 (1985). However, we need not consider that question here, because, had the trial court not granted a new trial and had plaintiff appealed and assigned error to the refusal to give the instructions, we would have found reversible error. Although the court's refusal to give the dual agency instruction *might* have been harmless, in the light of the other instructions on actual authority, the refusal of the ostensible agency instruction prevented the jury from considering an independent theory of liability and was clearly prejudicial. The trial court was correct in ordering a new trial.

Affirmed.