Argued and submitted May 14, affirmed June 20, 1990

Wanda Mae SHEPARD,
*Appellant,*

*v.*

SISTERS OF PROVIDENCE IN OREGON,
dba St. Vincent Hospital and Medical Center,
*Respondent,*

*and*

Nathaniel D. WILSON, M.D.,
Nathaniel D. Wilson, M.D., P.C., Robert J.
Condon, M.D., Robert J. Condon, M.D., P.C.,
*Defendants.*

(A8401-00175; CA A60886)

793 P2d 1384

James C. Tait, Oregon City, argued the cause and filed the briefs for appellant.

Carrell F. Bradley, Hillsboro, argued the cause for respondent. With him on the brief was Larry A. Brisbee, Hillsboro.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The issue in this medical malpractice action is whether Dr. Teply, a surgical resident whose negligence injured plaintiff during an operation at defendant hospital, was the hospital's agent for purposes of the operation, making the hospital vicariously liable for the injury. Plaintiff contends that he was, and the hospital argues, *inter alia,* that he was instead the agent of the University of Oregon Health Sciences Center (university). Teply was an employee of the university, but was assigned to the hospital pursuant to an affiliation program and agreement. In *Shepard v. Sisters of Providence,* 89 Or App 579, 750 P2d 500 (1988), we affirmed the trial court's order allowing plaintiff a new trial, because of errors pertaining to jury instructions on agency at the first trial. Plaintiff now appeals from the judgment for the hospital in the second trial. We affirm.

We explained in *Shepard v. Sisters of Providence, supra:*

"The participating residents are employed by university which assigns them, on a rotating basis, to hospitals with which it has affiliation agreements. Each participating hospital must designate a head of the integrated program. That role at defendant hospital is performed by the director of hospital's department of surgery, who is a salaried hospital employe. Hospital's associate administrator testified that, notwithstanding university's primary responsibility for the supervision and professional development of residents in the program, hospital's director of surgery supervises the residents, reviews their work and criticizes their work 'if that's necessary.' For purposes of the program, hospital's director of surgery is a member of university's surgery faculty.

"Residents perform their services under the immediate supervision and direction of individual physicians, usually private practitioners, who have surgical privileges at and are members of the medical staffs of participating hospitals. Those physicians are denominated 'preceptors,' and they must either be university faculty members or be approved as preceptors by the chairman of university's department of surgery. [Dr.] Wilson was acting as Teply's preceptor in connection with plaintiff's operation. Teply was the chief surgical resident at hospital. It was his responsibility to assign residents to preceptors for particular procedures. He assigned himself to assist Wilson in the surgery on plaintiff.

"'* * * * *

"The agreement between university and hospital contains these provisions:

" 'Nothing contained in this agreement shall be construed to limit in any way the responsibility of the Hospital for the establishment of its own policies and for the operation of the Hospital in a manner consistent with its objectives and the rendition of quality health care at a reasonable cost.

" '* * * * *

" 'The clinical experience of such clinical education programs will be subject to the joint approval of Hospital and University. It is understood that, in the interest of high quality patient care, Hospital reserves the right under any clinical affiliation program to control the amount and type of direct services to patients provided by students in this program.' " 89 Or App at 581-83.

We then noted and rejected the hospital's contention that

"it was essentially a cipher in the arrangement and simply provided facilities and the mechanics by which residents for whom university was generally responsible could be brought together with the private physicians who would assume responsibility over them for specific professional activities. The jury could have and, apparently, did find facts in accordance with that argument.

"However, that finding was not compelled as a matter of law, and there was ample evidence from which the jury could have made the opposite finding. The arrangement between university and hospital assumed a complicated form. For purposes of the program, hospital's chief surgical employe became at least a nominal university faculty member, and the preceptors from hospital's medical staff with whom the residents worked directly had to be affiliated with or approved by university. The fact finder was not obliged to agree with hospital that its director of surgery was acting solely as a university faculty member, rather than as its employe, in the supervision of the residents which there was evidence to show he exercised. The jury was also not required to believe that the reservation of hospital's right of control in the contract did not mean what it said." 89 Or App at 583.

Plaintiff contends in her first assignment that the court erred by denying her motion for a directed verdict, made

on the ground that the quoted provisions of the agreement, along with various others, gave the hospital the right of control over Teply and made him its agent as a matter of law. Plaintiff appears to understand our opinion in the first appeal to lend support to that view. She is incorrect. We concluded that there was evidence to support either finding on the agency question. The contractual relationship between the university and the hospital was complex, if not convoluted. Hospital officials and affiliates were designated as also being university officials and affiliates for purposes of the program. The contract documents assigned supervisory responsibilities to both entities. We do not agree with plaintiff that they unambiguously conferred the right of control on the hospital. The evidence at the second trial was similar to that in the first and permitted a finding that Teply was not the hospital's agent.

Plaintiff also asserts that, under *Piehl v. The Dalles General Hospital,* 280 Or 613, 571 P2d 149 (1977), Teply was the hospital's agent, regardless of whether it exercised actual control over or had the right to control him. She explains:

> "[T]he Court stated that regardless of whether or not an agent is a loaned servant of a surgeon for some purposes, he remains an agent of the hospital in carrying out the work for which the hospital is being paid. Dr. Tepley's presence at the hospital and participation in the surgery was as part of St. Vincent's participation in the surgical residency program. Tepley's salary and all costs related to the program were paid for by the defendant. He was as a matter of law carrying out work for which the hospital was being paid."

The language in *Piehl* on which plaintiff relies related to whether nurses employed by the hospital remained its agents or became "loaned servants" of the surgeon whom they assisted in an operation. This case presents the different question of whether Teply was the hospital's agent, the university's or their dual agent, *ab initio.* We said in *Shepard v. Sisters of Providence, supra,* 89 Or App at 584, that "it is not correct that any agency relationship which *may* have existed between Teply and hospital ended at the operating room door." (Emphasis supplied.) However, unlike that issue in the previous appeal and unlike the issue in *Piehl,* the question now is whether any agency relationship between Teply and the hospital *did* exist before he arrived at the operating room

door. There was conflicting evidence, and the court correctly denied the directed verdict.

■      For similar reasons, plaintiff's assignments challenging the admission of testimony by three witnesses about how the program actually operated and how and by whom control was exercised, are not well taken. Because the agreement did not dispositively and unambiguously resolve the control issue, the testimony was admissible and relevant.

Plaintiff contends next that the court erred in refusing to give various requested instructions. We agree with defendant that, to the extent that those instructions would have been proper, their substance was adequately conveyed to the jury through other instructions that the court gave.

■      Plaintiff also argues that the court erred by allowing Wilson, the surgeon whom Teply assisted in the operation on plaintiff, to testify about the qualifications of residents, the details of the surgery and the nature of Teply's performance. Plaintiff maintains that the only issue before the jury was agency and that she was prejudiced by the testimony, "because it bore solely upon the negligence of Dr. Teply." The court instructed the jury on what it was to decide and, during the course of Wilson's testimony and in the jury's presence, it admonished him that "we're not interested in discussing or deciding the question of alleged negligence." Even assuming error, there was no likelihood that the jury considered the evidence improperly, and there was no prejudice.

■      Lastly, plaintiff ascribes error to the court's exclusion of testimony and refusal to give an instruction relating to Teply's and the university's limited liability under the Oregon Tort Claims Act. Plaintiff explains:

> "Plaintiff testified that she would not have consented to the surgery if she had known that a resident would participate in the surgery who did not work for the hospital. She believed the hospital was responsible for supervising residents. On cross examination, however, she stated that she did not know if it made a difference to her if a resident was employed by the university or the hospital.
>
> "The difference is that agents of public bodies such as the university have the tort claims immunity provided by ORS 30.260 to 30.300. The defendant in this case argued to the jury that the only evidence that supported the apparent authority

claim in this case was Mrs. Shepard's testimony four years after the fact when this lawsuit was pending that had she known a resident had been involved, she would not have consented. In essence, the hospital adopted an education program involving state employees, gave no notice to the patient of the resident's involvement or his immunity and then was able to successfully keep the jury from hearing an objective reason why who is performing the surgery makes a difference."

Plaintiff sought to elicit the facts about Teply's "immunity" from a witness who had no connection with the events surrounding her consent and no familiarity with her feelings about residents or their employment status. There is nothing in the record to suggest that Teply's amenability to suit could have been material to plaintiff's decision to consent or to her perception that he was the hospital's agent. The evidence and the instruction were correctly rejected.

Affirmed.