Argued and submitted March 5, reversed and remanded June 3, reconsideration denied July 29, petition for review allowed September 29, 1992 (314 Or 391)

Edith M. HOLGER,
Personal Representative of
the Estate of Ethel I. Loveall, Deceased.
*Appellant,*

*v.*

C. Edwin IRISH, M.D.,
*Respondent.*

(A8910-05814; CA A67769)

834 P2d 1028

Dwight L. Schwab, Portland, and David B. Williamson, St. Helens, argued the cause for appellant. With them on the briefs were Schwab, Hilton & Howard, Portland, and Williamson & Williamson, St. Helens.

Karen M. O'Kasey, Portland, argued the cause for respondent. With her on the brief were Janet M. Schroer and Schwabe, Williamson & Wyatt, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, personal representative of the deceased patient, appeals from the judgment entered on a jury's verdict in favor of defendant physician in this medical malpractice action. Plaintiff alleged that the decedent was injured by defendant's negligence in leaving a surgical sponge in her abdomen while performing an operation on her. Plaintiff also named Good Samaritan Hospital, where the surgery was performed, as a defendant. However, she settled with the hospital before trial and, after receiving the settlement proceeds, she amended her complaint to eliminate any reference to the hospital as a party. Defendant did not attempt to feel for sponges or other surgical material before completing the operation. The focus of his defense is that the nurses who assisted him, and who were hospital employees, were responsible for counting the sponges and accurately apprising him about whether all of them were accounted for. He relied on the information that they gave him that the right number of sponges had been counted before he closed the surgical site. Hence, he maintained, the injury was due to the nurses' negligence, and he was not negligent.

Plaintiff assigns nine errors that raise four basic issues: Whether the court erred by excluding certain evidence, by refusing to submit to the jury her theory that defendant could be vicariously liable for the nurses' negligence, by informing the jury of the settlement with the hospital and by refusing to give plaintiff's requested *res ipsa loquitur* instruction.

Defendant raises two preliminary matters that must be addressed before we reach the merits of the vicarious liability issue. He argues, first, that plaintiff did not plead or prove the facts to support vicarious liability, but instead proceeded solely on the theory that defendant himself was negligent. No specific pleading of the vicarious liability theory was necessary. *See Kuhns v. Standard Oil Co.*, 257 Or 482, 509, 478 P2d 396 (1970). Defendant's assertion that there is a failure of proof is based on plaintiff's emphasis throughout the trial that she was proceeding against defendant only and on the absence of any evidentiary showing that the "nurses were agents of [defendant] in connection with the sponge count" or that he had control over them in that connection.

We do not agree. There was ample evidence that the nurses were negligent and, indeed, defendant himself produced that evidence. Whether their negligence can be imputed to him is a question of law.

Defendant next contends that plaintiff was foreclosed from proceeding against him on the vicarious liability theory because, in a covenant not to sue the hospital executed in conjunction with the settlement, she agreed not to proceed against

> "any person or legal entity who is liable for the conduct of any hospital employee or agent and/or who would have a right to be indemnified on account of vicarious liability based on the conduct of Good Samaritan Hospital, or any of their [*sic*] employees or agents."

The covenant also states, however:

> "6. It is further understood and agreed that the intent of the undersigned is to preserve all rights the undersigned may have against [defendant]."

Defendant argues:

> "Plaintiff may argue that paragraph 6 of the Covenant, which reflects her intent to preserve her rights to maintain her suit against [defendant] somehow preserves a vicarious claim against him for hospital negligence. Such a construction contradicts the clear terms of the settlement agreement and simply does not make sense. Paragraph 6 only serves to preserve plaintiff's claims *against [defendant]* — *i.e., direct* negligence claims. The terms of the Covenant make it clear that plaintiff intended to settle any and all claims of negligence, including vicarious claims." (Emphasis defendant's.)

We disagree again. The clear meaning of the paragraph is that *all* rights to proceed against defendant are being reserved and that the other provisions of the covenant do not apply to him.

Plaintiff's vicarious liability theory is based on the doctrine followed in many jurisdictions that a surgeon is accountable for the injurious acts of hospital employees who assist in operations. The rationales for the doctrine have been variously stated, but their essence is that the surgeon is responsible for the procedure and has the right to control all personnel who participate in it, whoever employs them. The most direct statement of the doctrine in a decision by the

Oregon Supreme Court seems to be almost an aside in the context of the court's opinion. In *Nicholson v. Sisters of Charity*, 255 Or 251, 463 P2d 861 (1970), a safety pin was left in the plaintiff's body during surgery. She sued the surgeons and obtained a judgment against them. They argued on appeal that *res ipsa loquitur* should not have been applied against them, because they did not have exclusive control over the pins used in the surgery. The court explained the argument and rejected it:

> "They claim that the evidence shows it was the duty of the nurses, who assisted in the operation and who were employed by the hospital, to take care of the pins. Be that as it may, the doctors were in complete charge of what occurred to plaintiff's person and, therefore, the principle is applicable." 255 Or at 253.

Later opinions have made the question increasingly unclear. The court said, in *dicta*, in *May v. Broun*, 261 Or 28, 36-37, 492 P2d 776 (1972):

> "*Respondeat superior* is usually determined by the right of the claimed principal to control the negligent actor. There is no doubt that a surgeon has the right to control the employees of the hospital, including the nurse, in the preparation of the hospital room and of the patient for surgery, as well as in the carrying out of their functions during surgery. However, in a situation where the nurse is in the general employ of the hospital and is performing services for the hospital as well as for the surgeon, courts do not now usually hold that she changes from a general employee of the hospital to a special employee of the surgeon until she is under the surgeon's direct supervision or control. See cases cited in Annotation entitled, 'Surgeons — Nurse's Negligence,' 12 ALR3d 1017 at 1021-1022. Thus, courts are now usually holding that the surgeon's responsibility for the hospital employee's negligence is limited to situations in which the negligence occurs during the course of the actual operation when the surgeon is present and that he is not responsible for pre- or post-operative procedures which it is usual for the hospital's employees to perform in the surgeon's absence." (Footnote omitted.)

However, the court held there that the defendant surgeon was not responsible for an injury that a patient suffered during surgery as the result of a malfunctioning machine that was owned by the hospital and that was prepared for use in

the surgery by hospital personnel before the operation and before the defendant was present.

Although *May* endorses the surgeon accountability doctrine, the endorsement is qualified. The holding states an exception, and the opinion also questions the underpinnings of the doctrine. It suggests both that the abolition of charitable immunity for hospitals and the increasing complexity of modern operating procedures that render total control by a surgeon over all assistants' activities incompatible with "concentration and attention to the surgery" itself, might militate against a strict application of the doctrine. 261 Or at 37-38.

■ *Piehl v. The Dalles General Hospital*, 280 Or 613, 571 P2d 149 (1977), also involved injuries due to a sponge being left in a patient. The court held that the hospital was vicariously liable for the nurses' negligence and, hence, that it was not entitled to indemnity from the surgeon, whom the jury also found to be independently negligent. *Piehl* does not suggest that the surgeon could not be derivatively liable, too, for the acts of the nurses. An agent may, of course, serve two principals simultaneously. *See Shepard v. Sisters of Providence*, 89 Or App 579, 750 P2d 500 (1988). However, the court prefaced its holding with the words "[r]egardless of whether or not the nurses were the loaned servants of the surgeon for some purposes." 280 Or at 620. That caveat suggests that the question that the court appeared to answer in *Nicholson v. Sisters of Charity, supra*, and *May v. Broun, supra*, is still an open one. Neither *Nicholson* nor *May* is discussed in the *Piehl* opinion, and the fact that the same Supreme Court judge wrote all three opinions diminishes the likelihood that the omission was an oversight. *See also Simpson v. Sisters of Charity of Providence*, 284 Or 547, 553, 588 P2d 4 (1978); *but see Shepard v. Sisters of Providence, supra*.

■ Defendant offers policy arguments to support a holding that he cannot be held vicariously liable. The application of the accountability doctrine may be particularly anomalous in this case. There was evidence that would have allowed the jury to conclude that, if defendant was supervising details like the sponge count, he would thereby be neglecting his primary role in performing the operation. If the jury believed that evidence, as it apparently did, the doctrine would subject defendant to possible derivative liability on the basis of the

fiction that he has a right of control, the exercise of which could render him personally negligent. Nevertheless, we understand that doctrine to have been adopted in *Nicholson v. Sisters of Charity, supra,* and *May v. Broun, supra.* The Supreme Court has not overruled those cases, and we cannot.

Defendant argues that, even if the accountability doctrine as articulated in *May v. Broun, supra,* is applicable, he cannot be vicariously liable, because:

> "While [defendant] testified he was generally in control of the nurses' activities during surgery generally, the record in this case reveals that only the nurses perform the actual sponge count. In the event there is an improper sponge count, (the counts here were correct) the physician can ask for another count, but the nurses are solely responsible for the manner and method of counting sponges. Defendant's expert, Dr. Raglione explained, backing the court's observations in *May,* that operating rooms are now very complex places, with specialized people to handle each job; operating room nurses are no longer 'jacks of all trades,' but in fact are highly trained specialists. In fact, Dr. Raglione testified that the surgeon is required to follow the nurses' sponge count. In view of the evidence in this case, *May* supports the court's rejection of the vicarious liability instructions." (Footnote omitted.)[1]

The function of counting sponges is an integral part of the surgical procedure for which the surgeon is responsible under the line drawn in *May.* Defendant cuts far too fine a distinction between his "general control" and the nurses' "sole responsibility" for that function. It was performed during the course of the surgery, while defendant was present, and it was a component of the surgery. The court erred by not submitting the vicarious liability theory to the jury.

■ Because the other issues are likely to arise on remand, we address them. We emphasize, however, that our discussion of those issues is necessarily limited to their posture in the first trial and that some of our conclusions could be affected by events on remand. In particular, the requested *res*

---

[1] The sponge count, of course, was not correct. We understand defendant's statement that it was correct to mean that the nurses told him that they had accounted for all of the sponges, although they had in fact miscounted.

*ipsa loquitur* instruction referred only to defendant's conduct, not to that of the nurses. Although that may change on remand, we must address the situation as it stands, and we do not consider whether a *res ipsa loquitur* instruction based on the nurses' acts would be proper.

The trial court stated its basis for refusing the instruction:

> "The evidence is uncontradicted in this case that the nurses made an error in the count, and that's one but not the only reason for not giving the instruction. I don't think it adds anything to the case."

The trial court relied on *Watzig v. Tobin*, 292 Or 645, 653, 642 P2d 651 (1982), where the court said:

> "The res ipsa loquitur doctrine is of unique, inestimable assistance to plaintiffs in situations in which the plaintiff is unable to reconstruct the specific facts. The law comes to the plaintiff's aid to permit the drawing of an inference of specific fault where there is no direct evidence of specific fault."

Here, the "specific facts" were not only "reconstructed" through "direct evidence," they were virtually undisputed. In essence, the jury's choice was to accept or not to accept defendant's evidence that, if the nurses were solely responsible for the sponge count, he could not have violated the standard of care or been directly negligent by leaving the sponge in the patient's body. Conversely, if the jury had rejected that evidence, it would almost necessarily have found direct negligence by defendant without resort to *res ipsa loquitur*. We agree with the trial court that a *res ipsa loquitur* instruction could have added nothing of substance to the jury's evaluation of the evidence. It is unnecessary for us to address the parties' other arguments regarding the propriety of the instruction. The trial court did not err by refusing to give it.

■ Defendant's and the trial court's conclusion that the jury should be apprised of the settlement with the hospital was based on *Yardley v. Rucker Brothers Trucking, Inc.*, 42 Or App 239, 600 P2d 485 (1979), *rev den* 288 Or 335 (1980). The principal issue in that case was whether the reduction of a judgment to account for settlements between the plaintiff and the defendant's joint tortfeasors was a jury or a court

function. Although we said that it was a court function, we nevertheless held that the jury could be informed of the fact of the settlement in that case, although not its amount, because:

"On the eve of trial, plaintiffs tendered supplemental and amended complaints in which they alleged the existence and amount of their settlement with four of the original defendants. Plaintiffs seemingly were taking the position that the settlement credit function was for the jury; in any event, plaintiffs were clearly contending that the jury should learn of both the existence and amount of their settlement. * * *

"Depending upon the circumstances, it might be proper or improper for evidence to be admitted before the jury of the existence of a prior settlement. In this case, given that plaintiffs took the position before the trial court that the jury should be told of both the existence and amount of the settlement, we fail to see how plaintiffs can now claim that the trial court erred in allowing part of their request.

"But if evidence of a prior settlement is admitted, we have concluded the court must unequivocally instruct the jury to disregard the settlement and return a verdict for the full amount of the plaintiff's damages." 42 Or App at 243-44.[2]

In its present posture, this case bears little similarity to *Yardley*. The settling party was not named in the complaint on which the trial proceeded. Although defendant's theory in this case is that the nurses rather than he were negligent, there is no issue about whether they and the hospital were liable. The court apparently took the view that, given the evidence about the nurses, the jury might speculate about why they and the hospital were not parties if it was not told about the settlement. Plaintiff argues that evidence of the settlement was not relevant to any issue before the jury and that she was prejudiced because the jury might have inferred that she had already been fully compensated.

■ We agree with plaintiff that it was error to inform the jury of the settlement. The general rule is that it is prejudicial to a plaintiff to provide the jury with evidence or argument that the plaintiff might recover for his injuries from another tortfeasor or in another action. *See Roe v. Warren*, 243 Or 373, 413 P2d 610 (1966); *Fenton v. Aleshire*, 238 Or 24, 393

---

[2] Consistent with *Yardley*, the court here instructed the jury that it was not to consider the settlement in determining either liability or damages.

P2d 217 (1964). The trial court was incorrect in its understanding that *Yardley* called for a departure from that general rule here.

■     Plaintiff assigns error to the exclusion of a photograph and a slide depicting the sponge after it was surgically removed. The exhibits were larger than the sponge itself was and the configuration of the sponge was not the same in the exhibits as it was while it was compacted in the patient's body. The evidence was also either redundant or cumulative. The trial court acted within its discretion in excluding it.

Reversed and remanded.