### 73501. BROWN et al. v. COASTAL EMERGENCY SERVICES, INC. et al.

(354 SE2d 632)

BANKE, Presiding Judge.

This is an action by the appellants, Mr. and Mrs. Brown, to recover for the alleged malpractice of two hospital emergency room physicians, Drs. Fowler and Willoughby, in examining and treating Mr. Brown following an automobile accident. Also named as defendants, in addition to the two physicians, were the Richmond County Hospital Authority d/b/a University Hospital, which operated the hospital in which the emergency room was located, and Coastal Emergency Services, Inc., which had hired the two physicians to work in the emergency room pursuant to a contract with the hospital "to adequately staff" its "emergency department" with physicians.

The suit was filed in Fulton County, the location of Coastal's registered office. The trial court granted summary judgment to Coastal and the hospital authority, concluding as a matter of law that neither had been guilty of any independent act or omission upon which liability could be predicated and further concluding that the two physicians had acted as independent contractors in their care and treatment of emergency room patients, thereby precluding Coastal or the hospital authority from being held vicariously liable for their alleged negligence. Since Coastal was the only Fulton County defendant in the case, the trial court also determined that venue was no longer proper in Fulton County and transferred the case to the Superior Court of Richmond County, the alleged county of residence of Dr. Willoughby, pursuant to Rule 19.1 of the Uniform Superior Court Rules. Mr. and Mrs. Brown appeal.

Mr. Brown was initially brought to the emergency room for treatment of his injuries on May 7, 1983, immediately following the automobile accident. He remained at the hospital as an inpatient until May 17, 1983, when he was discharged. On May 26, 1983, he returned to the emergency room complaining of chest and back pain but was released after undergoing a CT scan of his chest, apparently performed to investigate a possible heart problem. He returned to the emergency room again on June 1, 1983, complaining of paralysis in the lower portion of his body. On this occasion, it was discovered that his spinal column was fractured. Mr. Brown alleges that he is now permanently paralyzed and confined to a wheelchair as a result of the

negligent failure of Drs. Fowler and Willoughby to discover this fracture during his previous visits to the hospital.

The physicians employed by Coastal to staff the emergency room were governed by a written contract which specified that "the physician shall at all times be acting and performing as an independent contractor practicing his profession of medicine, and the corporation shall neither have nor exercise any control or direction over the method or manner by which the physician performs his professional services and functions." With regard to scheduling, the contract required the physicians to notify Coastal by the tenth day of each month of the days and hours they would be available to work in the emergency room, from which notification of availability Coastal was authorized to schedule their services for the coming month. With reference to quality of care,. the contract specified that the physicians were to be subject to peer review as follows: "Quality Assurance and Peer Review. Physician acknowledges existence of corporation's Medical Advisory Board (Board) which is composed entirely of physicians, and understands that Physician will be subject to Quality Assurance and Peer Review Audits and procedures in accordance with the Board's Guidelines. . . ." *Held*:

1. The appellants contend that the trial court erred in denying their motion for an extension of time to permit them to engage in further discovery. This enumeration of error is without merit for at least three reasons. First, there has been no showing that any ruling was invoked on this motion. See generally *Nash v. Crowe*, 222 Ga. 173 (1) (149 SE2d 88) (1966); *Dehler v. Setliff*, 153 Ga. App. 796, 799 (2) (266 SE2d 516) (1980). Second, there has been no showing of the facts expected to be developed by the additional discovery, and thus no showing, pursuant to OCGA § 9-11-56 (f), that such discovery was "essential to justify . . . opposition" to the summary judgment motions. Finally, the appellants have made no showing that they exercised due diligence in pursuing the additional discovery, an omission which is particularly glaring in light of the fact that the hearing on the summary judgment motions was not held until some six weeks after the motion for extension of time was filed. See generally *Calcutta Apts. Assoc. v. Linden & Deutsch*, 131 Ga. App. 743 (1) (206 SE2d 559) (1974); *Dobbs v. Cobb E. N. T. Assoc.*, 165 Ga. App. 238, 239 (1) (299 SE2d 141) (1983).

2. The general principles governing the liability of hospitals for the malpractice of staff physicians utilizing their facilities are set forth in *Allrid v. Emory Univ.*, 249 Ga. 35, 39-40 (285 SE2d 521) (1982), as follows: " 'The rule is that for the hospital to be held liable it must be shown that the doctor was an employee of the hospital and not an independent contractor.' *Ga. Osteopathic Hospital v. Hollingsworth*, 242 Ga. 522 (250 SE2d 433) (1978). 'The true test of

whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.' *Hodges v. Doctors Hospital*, 141 Ga. App. 649, 651 (234 SE2d 116) (1977)." Accord *Employer's Mut. Liab. Ins. Co. of Wausau v. Johnson*, 104 Ga. App. 617, 620 (122 SE2d 308) (1961).

In the oft-cited case of *Pogue v. Hosp. Auth. of DeKalb County*, 120 Ga. App. 230, 231 (170 SE2d 53) (1969), this court held that "[a] hospital is not liable for the negligence of a physician employed by it where the negligence relates to a matter of professional judgment on the part of the physician when the hospital does not exercise and has no right to exercise control in the diagnosis or treatment of illness or injury." Since it would almost certainly be violative of a physician's professional ethics for him to abandon his professional judgment in matters relating to the diagnosis and treatment of patients, it has been pointed out that literal application of this test would effectively enshroud hospitals with an "impenetrable cloak of immunity" in malpractice actions based on physician negligence. See *Stewart v. Midani*, 525 FSupp. 843, 849 (N. D. Ga. 1981). Cf. *Mitchell County Hosp. Auth. v. Joiner*, 229 Ga. 140 (189 SE2d 412) (1972). However, it is quite evident that the control test set forth in *Pogue* has not been applied to such effect by the courts of this state.

In *Newton County Hosp. v. Nickolson*, 132 Ga. App. 164, 167 (207 SE2d 659) (1974), for example, a showing by the hospital that "no hospital employee or staff member had the right to control the medical techniques or judgment of the physicians in command of the emergency room" was determined to be insufficient to insulate the hospital from liability for the alleged negligence of such physicians in the face of evidence that the hospital had paid them an hourly wage and exercised control over their work schedules. In fact, the court indicated in *Nickolson* that the issue of whether the hospital had assumed control over the manner and method of the defendant physician's performance was not even a relevant subject of inquiry unless and until there had been a showing that the physician had been acting as an independent contractor. Id. at 168.

Similarly, in *Hodges v. Drs. Hosp.*, 141 Ga. App. 649 (234 SE2d 116) (1977), evidence that the hospital had required its staff physicians to perform emergency room services on a rotational basis as a requisite to remaining on the staff and had paid them $100 a day for such services was held sufficient, in and of itself, to create a jury issue as to the hospital's liability. The *Hodges* decision was followed in *Hollingsworth v. Ga. Osteopathic Hosp.*, 145 Ga. App. 870 (245 SE2d 60) (1978), aff'd 242 Ga. 522 (250 SE2d 433) (1978), wherein the hos-

pital had merely required its staff physicians to be on duty in the emergency room at least once a month and to perform their work in accordance with the standards then existing in the profession.

Such rulings suggest that, in practice, a hospital may subject itself to vicarious liability for the malpractice of its emergency room physicians merely by assuming control over the time of their performance and without assuming control over the manner and method of their performance. While we note this apparent anomaly, we are not called upon in the present case to resolve it because the record before us conclusively demonstrates that Drs. Fowler and Willoughby were in fact subject to neither type of control. With respect to the time of their performance, it is apparent that they could not be required either to work on specific dates, absent a prior manifestation of willingness on their part to do so, or to work any minimum number of hours per month. With respect to the manner and method of their performance, the contract merely required them to be subject to peer review. It has repeatedly been held that a contractual provision to such effect does not amount to a reservation of control over a physician's professional judgment but simply sets forth a mechanism by which the quality of his or her performance may be ascertained and monitored. See, e.g., *Pogue v. Hosp. Auth. of DeKalb County*, 120 Ga. App. at 231, supra; *Overstreet v. Doctors Hosp.*, 142 Ga. App. 895, 897 (237 SE2d 213) (1977). It follows that Drs. Fowler and Willoughby must conclusively be deemed to have been acting as independent contractors rather than employees in their care and treatment of emergency room patients.

3. The appellants further contend, however, that both Coastal and the hospital authority may be held vicariously liable for the alleged negligence of Drs. Fowler and Willoughby based on the doctrine of apparent or ostensible agency, regardless of whether their actual status was that of employee or independent contractor. The appellate courts of this state have not previously had occasion to consider the applicability of this doctrine to medical malpractice actions. We note, however, that the doctrine appears to have been adopted in such actions by the courts of every other state in which it has been asserted as a basis for liability. See *Smith v. St. Francis Hosp.*, 676 P2d 279, 282-283 (Okla. App. 1983); *Grewe v. Mt. Clemens Gen. Hosp.*, 404 Mich. 240 (273 NW2d 429) (1978); *Irving v. Doctors Hosp. of Lake Worth*, 415 S2d 55, 57-59 (Fla. App. 1982); *Mduba v. Benedictine Hosp.*, 384 NYS2d 527 (App. Div. 1976); *Paintsville Hosp. Co. v. Rose*, 683 SW2d 255, 256-258 (Ky. 1985); *Adamski v. Tacoma Gen. Hosp.*, 20 Wash. App. 98 (579 P2d 970) (1978); *Vanaman v. Milford Mem. Hosp.*, 272 A2d 718 (Del. 1970); *Hannola v. City of Lakewood*, 68 Ohio App. 2d 61 (426 NE2d 1187) (1980); *Capan v. Divine Providence Hosp.*, 287 Pa. Super. 364 (430 A2d 647) (1980); *Themins v.*

*Emanuel Lutheran &c. Bd.*, 54 Or. App. 901 (637 P2d 155) (1981); *Mehlman v. Powell*, 281 Md. 269 (378 A2d 1121) (1977); *Edmonds v. Chamberlain Mem. Hosp.*, 629 SW2d 28 (Tenn. App. 1981); *Arthur v. St. Peters Hosp.*, 169 N. J. Super. 575 (405 A2d 443) (1979); *Standhope v. Los Angeles College of Chiropractic*, 54 Cal. App. 2d 141 (128 P2d 705) (1942).

In *Stewart v. Midani*, 525 FSupp. 843, 850-853, supra, the United States District Court for the Northern District of Georgia applied the apparent agency doctrine against a hospital in an emergency room malpractice action very similar to the one before us, based on what it perceived to be existing Georgia law. As was recognized by the federal district court in that case, the doctrine of apparent agency is predicated on principles of estoppel and applies where it can be shown " 'that the third party dealt with the agent in reliance upon the authority which the principal has apparently conferred upon him. . . .' " Id. at 851, citing *Interstate Fin. Corp. v. Appel*, 134 Ga. App. 407, 411 (215 SE2d 19) (1975). Cf. Butler & Laszlo, "Hosp. Liability for Physician Negligence in Ga.: A Realistic Approach," 37 Mercer Law Rev. 817 (Winter 1986).

Although the issue of apparent agency is perhaps more likely to arise in the context of contractual or commercial transactions, there would appear to be no question that an apparent agency relationship may also give rise to tort liability where it can be shown that the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency. The Restatement (2d) of Agency, § 267, provides: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." See also Restatement (2d) of Torts, § 429. We note that, in the present case, Mr. Brown specifically averred in his affidavit filed in opposition to the summary judgment motions that he opted to be treated by the physicians on duty at the University Hospital emergency room rather than by a "private doctor" because he "felt that the hospital doctors would give better care."

Quite clearly, a hospital patient whose treatment is under the control and supervision of a privately retained physician is in a categorically different relationship with the hospital than is a patient whose attending physician is furnished to him by the hospital itself. In the former circumstances, the hospital is merely providing "hospital care in its usual accepted sense in furnishing a room, operating room, employees, food and shelter and . . . nurses and interns to assist physicians," *Ahrens v. Katz*, 164 Ga. App. 729, 730 (297 SE2d 108) (1982), while in the latter the hospital is also providing the medi-

cal judgment and skill which will determine how its facilities are to be utilized. By furnishing the attending physician, the hospital is in effect holding him out as its own and calling upon the patient to accept his services based on its own reputation rather than the physician's.

There would appear to be no question in the present case that the emergency room was being operated under the hospital's own name, as an integral part of its services. A member of the general public might reasonably have assumed under such circumstances that the physicians on duty there were acting under the hospital's aegis and on its behalf, i.e., that they were "hospital doctors." Such appearances speak much louder than the words of whatever private contractual arrangements the physicians and the hospital may have entered into, unbeknownst to the public, in an attempt to insulate the hospital from liability for the negligence, if any, of the physicians. Accord *Smith v. St. Francis Hosp.*, supra, 676 P2d at 283. Compare *Manis v. Gulf Oil Corp.*, 124 Ga. App. 638 (185 SE2d 589) (1971).

Applying the doctrine of apparent agency to this case, we hold that the trial court erred in granting the hospital authority's motion for summary judgment. However, there being no suggestion in the record that Mr. Brown relied in any way upon Coastal's reputation or, indeed, that he even knew of that company's existence, there is no basis upon which Coastal may be held liable under the apparent agency doctrine. Thus, having previously determined that no *actual* master-servant relationship existed between Coastal and the emergency room physicians, we hold that the trial court did not err in granting Coastal's motion for summary judgment.

4. Since Coastal was the sole Fulton County resident named as a defendant, the trial court did not err in concluding that the grant of its motion for summary judgment necessitated the transfer of the case to a court with jurisdiction over the remaining defendants, pursuant to Rule 19.1 of the Uniform Superior Court Rules. Accord *Long v. Bruner*, 171 Ga. App. 124 (318 SE2d 818) (1984).

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 13, 1987 —
REHEARINGS DENIED MARCH 2, 1987 —

*Yehuda Smolar, Barry L. Roseman, Anne E. Barnes, Thomas A. Rice,* for appellants.

*Theodore E. G. Pound, Michael G. Frick, John E. Hall, Jr.,*

*Brynda S. Rodriguez, Ted H. Clarkson, Patricia W. Booker,* for appellees.