**Jacquelyn WRAY and Joshua Wray, Minor Children, By and Through their Father, Joseph R. Wray, Appellants,**

v.

**SAMUEL U. RODGERS' COMMUNITY HEALTH CENTER, INC., Respondent.**

**No. WD 49801.**

Missouri Court of Appeals, Western District.

April 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

David R. Morris and John E. Rogers, Overland Park, for appellants.

Timothy M. Aylward and Scott Martin, Kansas City, for respondent.

Before FENNER, C.J., P.J., and BERREY and ULRICH, JJ.

BERREY, Judge.

The Wrays appeal the trial court's granting of partial summary judgment as to respondent Samuel U. Rodgers' Clinic.

Deborah Wray was admitted to Truman Medical Center in April, 1989. On April 2, she gave birth to her second child. During this hospital stay, her blood tests revealed a severe anemia. Appellants contend that her physician, Dr. Robert Chang, and other Truman Medical Center physicians failed to properly diagnose the anemia. The doctors did not determine Mrs. Wray was suffering from a blood condition that if left untreated would lead to thrombotic thrombocytopenic purpura ("TTP"). This disease is often fatal. She was discharged from Truman Medical Center on April 4, 1989, and Dr. Chang instructed her to return to Samuel Rodgers' Clinic in two weeks for follow-up.

Mrs. Wray's condition worsened so that she returned to Truman Medical Center's emergency room on April 7, 1989, and was admitted to the hospital. Mrs. Wray received treatment for TTP; however, on May 13, 1989, she died.

Appellants contend that the failure of Dr. Chang to properly diagnose her condition resulted in her death.

Appellants raise two points of error 1) that the trial court erred as a matter of law in granting summary judgment to respondent because Dr. Chang was its employee and as such respondent was vicariously liable for his negligent acts or omissions and 2) that alternatively Dr. Chang was the agent of respondent and was acting within the scope of his agency sufficiently for respondent to be vicariously liable for his negligent acts or omissions. "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 378 (Mo. banc 1993).

In considering an appeal from a summary judgment, the court will review the record most favorable to the party against whom summary judgment was entered. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). Facts set forth by affidavit or

otherwise in support of a summary judgment motion are taken as true unless denied by the non-moving party's response to the motion. *Cherry v. City of Hayti Heights,* 563 S.W.2d 72, 75 (Mo. banc 1978). Essentially, our review of a summary judgment is de novo. *ITT Commercial Fin.,* 854 S.W.2d at 376.

Robert M. Chang, M.D., graduated from Jefferson Medical College in Philadelphia, PA. He took his four years of residency in obstetrics and gynecology at St. Barbabas Medical Center, Livingston, N.J. Dr. Chang is board certified in OB/GYN. Dr. Chang received a National Health Service Corp. (NHSC) scholarship while attending Jefferson Medical College for three years. This scholarship was a year-for-year pay back program. Every year of scholarship Chang received from NHSC obligated him for one year of service at an indigent health care center approved by NHSC. Respondent's clinic was such a center. The NHSC approved the match up between Chang and respondent. Chang received his pay from NHSC. NHSC provided various benefits to Chang. Chang carried a government rating as a GS 12 or 13 while working at respondent's clinic. Vacation time, continuing medical education, time off and pension was provided Chang along with other federal employees. Chang testified he was not an employee of respondent during this time frame. He was not paid by respondent, except for his first two months of service with them. He did not wear a respondent name tag or lab coat. He worked with respondent's staff in staffing and rotation duties. Marilyn Sims Reynaud, M.D., was employed as staff physician by respondent and did not supervise Chang although on occasion they treated the same patients. Dr. Chang was not under direct supervision of Dr. Sims.

By unchallenged affidavit, Dr. Sims stated that neither she nor any other physician or administrator of respondent "exercise control—or have the right to control—the details of the manner in which Dr. Chang provided medical care to patients either in the health center or at Truman Medical Center." Dr. Sims also acknowledged that decisions by Dr. Chang about whether or how to treat a patient was in his sole discretion and not subject to prior review or approval.

Dr. Chang was assigned to respondent's clinic by the federal government. According to the unrefuted affidavit of Dr. Samuel U. Rodgers, former medical director of Samuel U. Rodgers' Community Health Center, Dr. Chang was a federal employee. Dr. Rodgers acknowledged he executed a Memorandum of Agreement with the United States Department of Health and Human Services and that Dr. Chang worked at respondent's clinic to satisfy his obligation for scholarship funds received from NHSC while a medical student. Under this obligation, he was to provide medical services in an area designated as a Health Manpower Shortage Area (HMSA) to fulfill his financial obligations to the federal government. Dr. Rodgers' affidavit substantiated Dr. Chang's deposition testimony concerning his salary and moving expenses being paid by the federal government. The Memorandum of Agreement between respondent and the United States Department of Health and Human Services provided that Chang's professional services were to be monitored, supervised and controlled by the federal government.

Pursuant to Section A(6), Obligations of the Secretary, of the Memorandum of Agreement, the federal government would undertake any defense to a claim of medical negligence brought against Dr. Chang.

■ Appellant first alleges Dr. Chang was a servant of respondent acting within the scope of his employment when he treated Deborah Wray.

Section 220, Restatement (Second) of Agency (1957), sets forth with specificity the definition of servant. Section 220(1) states "A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Dr. Chang was employed by the NHSC to practice medicine at Rodgers' Clinic. This employment and assignment was made by NHSC to satisfy Dr. Chang's financial obligation to the federal government.

The record discloses that Rodgers' Clinic did not exercise control of or have a right to control Dr. Chang. Appellants' allegations regarding control over Dr. Chang are not persuasive when viewed against the whole record.

Appellants cite *Keller v. Missouri Baptist Hosp.*, 800 S.W.2d 35, 37 (Mo.App.1990), for the proposition that a master/servant relationship may exist even though a physician retains his independent medical judgment. Their reliance on *Keller* does not alter the outcome of this matter. In *Keller*, plaintiff filed suit against Missouri Baptist Hospital and Spectrum Emergency Care, Inc., alleging that a physician provided to the Hospital by Spectrum negligently treated plaintiff's husband. Spectrum filed a motion for summary judgment contending the physician was not its employee but was an independent contractor. The trial court granted Spectrum's motion and the court of appeals reversed. *Id.* at 35. Spectrum executed an agreement to pay the physician and to cover the physician under its professional liability insurance. In addition, the physician signed a non-compete agreement, and the contract between Spectrum and the physician was renewed automatically, contemplating a long-term relationship. *Id.* at 36–38.

In the case at bar, Dr. Chang was not paid by respondent but rather by the federal government. Moreover, the federal government agreed to undertake any defense to a claim of medical negligence brought against Dr. Chang, and its agreement with respondent specifically granted NHSC the legal right to monitor, supervise and control Dr. Chang. There was no non-compete agreement between Dr. Chang and respondent nor a contract of any kind. Rather, Dr. Chang executed an agreement with the NHSC whereby he agreed to an assignment at respondent's clinic for a term of three years.

Based on all of the foregoing, the record reflects that respondent lacked the control necessary to deem Dr. Chang its employee. Point I is denied.

■ In their second point, appellants alternatively argue that Dr. Chang was an agent of respondent and acting within the scope of his agency sufficiently to hold respondent vicariously liable for Dr. Chang's alleged negligence. Appellants offer two arguments to support the agency theory. They first contend that Dr. Chang became respondent's agent by serving the business interests of the clinic pursuant to an express or implied agreement with respondent whereby respondent controlled Dr. Chang's conduct. Appellants next contend that in any event Dr. Chang should be deemed an agent of respondent because of his significant relationship with the Rodgers' Clinic.

■ Two elements are required to establish an agency relationship: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control. *Tom Lange Co. v. Cleaning by House Beautiful,* 793 S.W.2d 869, 871 (Mo. App.1990); Restatement (Second) of Agency Sec. 1 (1957). Appellants rely primarily on an Oregon case [1]—which obviously is not binding on this court—in claiming that these two elements exist in the present case.

Essentially, appellants assert that Dr. Chang agreed to serve the business interests of respondent because he did not privately practice medicine while working at the clinic and because Mrs. Wray did not seek out the care of a particular physician at the clinic. However, the record clearly reveals that Dr. Chang worked at Rodgers' Clinic to fulfill his scholarship obligation to the NHSC. There is no evidence that Dr. Chang had an agreement with Rodgers' Clinic to serve its interests. Rather, Dr. Chang's agreement was with the NHSC, and the NHSC entered an agreement with Rodgers' Clinic whereby NHSC was expressly granted the right to monitor, supervise and control Dr. Chang.

Moreover, even if Dr. Chang were deemed to have been serving respondent's business interests, respondent lacked the control necessary to establish an agency relationship. As noted, the Memorandum of Agreement between the federal government and respondent established that NHSC had the right to monitor, supervise, control and/or defend Dr.

1. *Shepard v. Sisters of Providence,* 89 Or.App. 579, 750 P.2d 500 (1988).

Chang. There was no similar right conferred upon respondent, and contrary to appellants assertion, there is no evidence in the record that NHSC relinquished its right of control to Rodgers' Clinic.[2]

Tacitly recognizing respondent's lack of control over Dr. Chang, appellants cite cases from other jurisdictions where a "significant relationship" test was adopted to determine whether a hospital should be vicariously liable for a physician's acts. While rules of agency in the hospital/physician setting provide a growing body of law, this is not a proper case for parting with established legal principles. The NHSC had a legal right to monitor, supervise, control and defend Dr. Chang.

Appellants alternatively refer to Dr. Chang as an agent, an employee or a borrowed servant of respondent. The nomenclature used by appellants under the facts herein is not sufficient to bestow vicarious liability upon Rodgers' Clinic because of any acts or omissions of Dr. Chang.

Judgment affirmed.

All concur.

2. Thus, even if the Oregon case of *Shepard v. Sisters of Providence,* 89 Or.App. 579, 750 P.2d 500 (1988), were binding in our courts, the instant case is sufficiently distinguishable. *Shepard* involved an "integrated program" between a defendant-hospital and the University of Oregon whereby the university employed and assigned residents to hospitals with which it had affiliation agreements. Each participating hospital had to designate a head of the "integrated program," who had to be affiliated with or approved by the university. Moreover, the agreement between the university and the hospital declared that the "clinical education programs will be subject to the joint approval of Hospital and University.... Hospital reserves the right under any clinical affiliation program to control the amount and type of direct services to patients provided by students in this program."

Obviously, the arrangement and agreement involved in *Shepard* differs from that involved in the instant case. Significantly, respondent in the case at bar had no contractual right to jointly approve the program nor to control Dr. Chang's performance of services.