Lucinda FERGUSON, et al., Appellants,

v.

PONY EXPRESS COURIER CORP., et al., Respondents.

No. WD 49631.

Missouri Court of Appeals, Western District.

May 23, 1995.

Andrew J. Gelbach, Warrensburg, for appellants.

Gregory N. Pottorff, Turner & Boisseau, Kansas City, for respondents.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Lucinda Ferguson and John Ferguson appeal from an order of the Circuit Court of Cass County granting summary judgment to Pony Express Courier Corporation ("Pony Express").

On December 6, 1989, Lucinda Ferguson was a passenger in an automobile driven by Sheryl Ballard. At the same time, Steven Ricketts was making deliveries for Pony Express. As the Ballard vehicle drove northbound on Missouri Highway 131 in Johnson County, Missouri, Ricketts drove his pickup on the same highway in the opposite direction. He crossed the centerline and sideswiped the Ballard vehicle. As a result of that collision, the Ballard vehicle went off the roadway and overturned, seriously injuring Ferguson. Following the accident, Ricketts pled guilty to careless and imprudent driving. On January 29, 1990, Lucinda and John Ferguson filed suit against Ricketts in the Johnson County Circuit Court. On the same day, Sheryl and Ronnie Ballard filed a separate action involving the same accident in the same court. The Ferguson suit was assigned to Judge Carl Gum. The Ballard suit was assigned to Judge J.P. Dandurand. On March 13, 1990, Ricketts filed an answer denying the allegations contained in the petitions and a motion for change of judge and change of venue in both cases. On March 26, 1990, Judge Gum sustained Ricketts' motion for change of judge and the case was reassigned and transferred to Judge Dandurand for final adjudication. On October 25, 1990,

Judge Dandurand sustained Ricketts' motion for change of venue and both cases were transferred to the Cass County Circuit Court.[1] The final result was that the Ferguson case was transferred from Judge Gum to Judge Dandurand; the Ballard case was transferred from Judge Dandurand to Judge Gum. In other words, the two suits were merely switched as far as which judge was to preside over them.

After the Fergusons requested permission to file an amended petition, on December 10, 1990, Judge Dandurand granted leave for the Fergusons to add Pony Express as a defendant upon an agency theory. On April 19, 1991, Pony Express filed its answer to the Fergusons' amended petition and demanded a jury trial. After several other proceedings decided by Judge Dandurand, on September 18, 1991, the Circuit Clerk for Cass County sent a notice to the respective attorneys for Ricketts, Pony Express, and the Fergusons, advising that the case was set on the jury trial docket before Judge Gum for January 8, 1992, and that a pretrial conference was scheduled before Judge Gum for December 16, 1991. In the meantime, further discovery requests were made by the parties.

On October 28, 1991, Pony Express filed a motion for summary judgment on the grounds that Ricketts was not its agent in that it did not control or have the right to control Ricketts' conduct. Pony Express claimed Ricketts was an independent contractor. Pony Express submitted two unverified exhibits with the motion but did not file any affidavits in support of its motion. On November 4, 1991, the Fergusons filed a response to Pony Express's motion for summary judgment, stating there were material questions of fact as to the relationship between Pony Express and Ricketts and that the issues regarding employment and agency were questions that should go to a jury. In the alternative, the Fergusons requested that the court postpone ruling on the motion for summary judgment until three named employees of Pony Express could be deposed. On November 13, 1991, Pony Express replied

---

1. Both Johnson and Cass Counties are in the Seventeenth Judicial Circuit. Therefore, Judge Dandurand remained the judge on the case when it was transferred to Cass County.

to the Fergusons' response, reasserting that it had no control over Ricketts.

On December 16, 1991, the scheduled date for the pre-trial conference, Judge Gum made a docket entry which granted summary judgment for Pony Express. On March 5, 1992, Judge Gum signed a journal entry granting summary judgment to Pony Express without further hearing.

Following more discovery and motions to the court, including a motion by the Fergusons requesting permission to file a new amended petition which included more allegations of agency against Pony Express (which was denied by Judge Gum), on March 3, 1994, Pony Express filed a motion to make the court's March 5, 1992 journal entry of summary judgment final for appeal purposes. The court denied that motion. On June 24, 1994, the Fergusons' case against Ricketts was tried to Judge Gum, resulting in a judgment for $1,000,000 for Lucinda Ferguson and $250,000 for John Ferguson. Ricketts did not appear for or participate in the trial, nor has he appealed the judgment. The Fergusons timely appealed Judge Gum's December 16, 1991 order granting summary judgment in favor of Pony Express and the resulting March 5, 1992 journal entry.

The Fergusons raise two points on appeal. In their first point, they contend Judge Gum erred in granting Pony Express's motion for summary judgment on March 5, 1992, because Judge Gum had already disqualified himself and the case had been assigned to Judge Dandurand. They claim that after Judge Gum disqualified himself and the case was transferred to Judge Dandurand on March 26, 1990, Judge Gum no longer had jurisdiction to adjudicate any aspect of this suit and any order entered by him after that date is void.

■ It is true that a judge who disqualifies himself or who has been disqualified by one of the parties has no further right to hear the case. *State v. Purdy,* 766 S.W.2d 476, 478 (Mo.App.1989). However, "parties can waive the disqualification, expressly or by conduct, and that by doing so they cannot thereafter complain about the judge's participation." *Id.* at 478–79. The Fergusons cite cases which refer to judge disqualification as a jurisdictional issue. They contend that because it is jurisdictional, it cannot be waived. In fact, they assert an order coming from a disqualified judge is void. *Purdy* rejected that argument, pointing out that none of the cases which talk in terms of jurisdiction and void orders considered the effect of the parties waiving their objection to the judge's further participation. *Id.* at 478.

The Fergusons next attempt to distinguish *Purdy* on the ground that it is a criminal case rather than a civil case. However, in holding that parties can waive the disqualification of a judge, the *Purdy* court relied on two civil cases, *Prather v. Prather,* 263 S.W.2d 57 (Mo.App.1953), and *Little Tarkio Drainage Dist. v. Richardson,* 237 Mo. 49, 139 S.W. 576 (1911). Thus, it makes no difference that the case at bar is a civil action.

■ In this case, the Fergusons filed and argued several motions before Judge Gum after the disqualification, and they proceeded to trial against Ricketts before him. They never objected to Judge Gum's presiding over any of the matters brought before him. As a result, they waived any argument they might have had as to Judge Gum's authority to decide Pony Express's summary judgment motion.[2] Point I is denied.

In their second point, the Fergusons contend the trial court erred in granting Pony Express's motion for summary judgment based on the December 16, 1991 hearing because, (a) Pony Express's motion for summary judgment was not in proper form in that it did not state with particularity the grounds for granting the motion and it was not supported by proper affidavits, in violation of Rule 74.04,[3] (b) there were material

---

2. The Fergusons also contend that they could not waive Judge Gum's disqualification because it was Ricketts who requested his disqualification. However, they cite no authority for the proposition, and we see no reason why it should make a difference who requested the disqualification. It is still the express agreement, or the conduct, of the parties which results in the waiver.

3. References to the Rules in this case are to the 1991 Rules of Civil Procedure, the rules in effect at the time of the relevant proceedings.

questions of fact on the issues of "agency," "control," and "benefit" between Ricketts and Pony Express, and (c) the Fergusons had requested alternative relief that the trial court postpone ruling on Pony Express's motion for summary judgment until the Fergusons could depose three Pony Express Employees and in violating Rule 74.04(d).

 Our review of the grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment is sought. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo. App.1993). The movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted, and any evidence in the record which presents a genuine issue as to material facts defeats a prima facie showing by the movant. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *Id.* And, the non-movant is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993).

Pony Express's motion for summary judgment stated, in its entirety:

> Comes Now defendant Pony Express Courier Corporation, by and through its attorneys of record, TURNER AND BOISSEAU, P.C., of Kansas City, Missouri, and pursuant to Supreme Court Rule 74.04, moves the Court for summary judgment. In support of its Motion, defendant incorporates the attached Suggestions in Support of Motion for Summary Judgment.
>
> WHEREFORE, defendant Pony Express Courier Corporation prays that summary judgment be granted in its favor on all claims, and for such other and further relief as the Court deems just and proper.

The motion was accompanied by suggestions in support and two exhibits, namely, a document purporting to be a cartage agreement between Pony Express and Ricketts and part of a document entitled "Sworn Statement of Steve Ricketts." The cartage agreement is not self-proving nor is it supported by affidavit. It is not even notarized.[4] The part of the "Sworn Statement of Steve Ricketts," as it was submitted with the motion, did not have an oath page or signature page nor was it supported by affidavit.[5]

 Rule 74.04(c) requires that the motion for summary judgment state with particularity the grounds for summary judgment. The Fergusons submit that Pony Express's motion for summary judgment did not meet this requirement. In fact, the motion itself states no grounds at all. Pony Express contends that by incorporating its suggestions in support, it has met the particularity requirement.

Rule 55.12 provides that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. An exhibit to a pleading is part thereof for all purposes." In *Machholz–Parks v. Suddath*, 884 S.W.2d 705, 708 n. 5 (Mo.App.1994), the court held that the suggestions in support of a motion for summary judgment fell within Rule 55.12 and examined them as part of the motion for summary judgment. As such, we treat Pony Express's suggestions in support as part of its motion for summary judgment and therefore, it complies with the particularity requirement of Rule 74.04.

The Fergusons further point to the inadmissible character of the two exhibits filed with the motion for summary judgment. They assert that these documents, even if they did tend to show Ricketts was an independent contractor, cannot support an order

---

4. Furthermore, in the copy of the agreement submitted to the trial court by Pony Express, the parts of the agreement that were filled in by hand are illegible.

5. For some reason, Pony Express only filed seven pages of the sworn statement. The oath page and whatever pages came after page 7, including the signature page, were omitted. In fact, as submitted with the motion, the "sworn statement" did not even identify who was asking or answering the questions.

of summary judgment because the two exhibits were not proper evidence. We need not decide this issue because we conclude that *even if* we consider the cartage agreement and the sworn statement, along with the other evidence in the record, including Ricketts' answers to the Fergusons' opening interrogatories, Lucinda Ferguson's answers to Ricketts' interrogatories, Pony Express's answers to interrogatories, and a videotaped deposition of Steven Ricketts,[6] Pony Express has failed to meet its burden of proof that *there is no dispute* as to the issue of agency.

There are numerous factors to be considered in determining whether a person is an independent contractor. The *Restatement (Second) of Agency* § 220(2) (1958), lists the following factors to aid in "determining whether one acting for another is a servant or an independent contractor:"

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*See also Keller v. Missouri Baptist Hosp.*, 800 S.W.2d 35, 38 (Mo.App.1990).

Viewing the evidence in the light most favorable to the Fergusons, the following supports finding an employer-employee relationship between Pony Express and Ricketts. First, Ricketts worked five days every week, Tuesday through Saturday. He reported for work by travelling to the Pony Express facility at approximately 5:00 a.m. each morning to pick up packages for delivery. Pony Express did not dictate the order in which deliveries were to be made, but did require that all deliveries be made by 10:00 a.m. In addition, Ricketts could not deliver small packages for anyone other than Pony Express without its prior written consent. This evidence tends to demonstrate regular work days and hours, as well as control over the timeliness of deliveries and Ricketts ability to work for others, and therefore tends to support an agency relationship. Second, the fact that Ricketts was prohibited from making small package deliveries for anyone other than Pony Express without permission is also analogous to a non-compete clause and tends to indicate that Ricketts was not in a distinct occupation or business. *Keller*, 800 S.W.2d at 38.

Third, the parties contemplated a long term relationship. Ricketts had worked for Pony Express for two years. The contract, which was described by Ricketts in his answers to interrogatories as an "employment contract," was for an indefinite term. As noted in *Keller*, if the period of employment is short, it is more likely that the worker is an independent contractor. *Id.* Conversely, a longer term of employment denotes an employer-employee relationship as being more likely.

Fourth, Pony Express paid Ricketts a fixed daily rate, and he was paid on Friday of each week. He was paid the same amount if he made one delivery or one hundred deliveries. In return, he worked a regular five-day work week. Furthermore, he worked a specific area, making deliveries only in Holden,

---

**6.** The interrogatories and depositions in the record before Judge Gum could all be considered under Rule 74.04(c).

Warrensburg and Sedalia. "The relation of master and servant is indicated by the following factors ... payment by hour or month; employment over a considerable period of time with regular hours; full time employment by one employer; employment in a specific area ...; the fact that the work is part of the regular business of the employer." *Id.* at 39 (*quoting* Restatement, *supra,* § 220 comment h).

Fifth, Pony Express retained the right to terminate Ricketts. As stated by the court in *Keller,* "[c]losely allied to the power of control is the ability to enforce orders in regard to the manner of performance, usually the right to fire the employee...." *Id.* at 39 (*quoting Coble v. Economy Forms Corp.,* 304 S.W.2d 47, 52 (Mo.App.1957) (emphasis omitted)). Finally, Pony Express was clearly in the business of delivering packages, and the work performed by Ricketts was part of its regular business.

Considered together, the foregoing is more than sufficient to raise a question of material fact as to the existence of an agency relationship between Ricketts and Pony Express. *See Keller* at 39. Therefore, the trial court erred in sustaining Pony Express's motion for summary judgment. Having reached this conclusion, we need not address the Ferguson's final sub-point that the court erred by not giving them additional time in which to depose three Pony Express employees.

The trial court's order granting summary judgment in favor of Pony Express is reversed and the cause is remanded for further proceedings.

All concur.